**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RUSSELL SEWARD WOODROW,**

                **Plaintiff,**

  vs.                                                7:16-cv-00008
                                                            (MAD)

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**CONBOY, MCKAY, BACHMAN &**          **LAWRENCE D. HASSELER, ESQ.**
**KENDALL, LLP**
407 Sherman Street
Watertown, New York 13601
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **BENIL ABRAHAM, SPECIAL AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Russell Seward Woodrow ("Plaintiff") commenced this action on January 5, 2016, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for a period of disability and Disability Insurance Benefits ("DIB"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is August 7, 1960, and he was forty-eight years old on January 3, 2009, the alleged onset of his disability. *See* Dkt. No. 9, Administrative Transcript ("T."), at 268. Plaintiff is seeking a closed period of disability from February 23, 2011 through December 31, 2013. *See id.* At the disability hearings, Plaintiff testified that his daily activities were limited to listening to music at a low volume and playing computer games. *See id.* at 78-79. He was not resting or napping during the day, and he was not suffering from any side effects from his medications. *See id.* at 47, 76. Plaintiff read the newspaper and watched television every day. *See id.* at 299.

Plaintiff is able take care of his personal needs on a daily basis, except that he shaves once a week. *See id.* at 76, 296-97. He walked with the assistance of a cane and estimated that he could walk 160 feet total, stopping halfway to rest. *See id.* at 77. Plaintiff was able to do laundry, wash dishes, and cook in a crock pot or grill. *See id.* at 78. His father assisted him with grocery shopping by lifting the bags. *See id.* During this period of disability, Plaintiff was not able to participate in hunting and fishing due to his impairments. *See id.* According to Plaintiff, he does not leave the house or socialize except to go to his doctor's appointments. *See id.* at 79. However, Plaintiff had a girlfriend in this period of time, and he maintained a relationship with her. *See id.* at 87. He also transported her to do laundry and grocery shop. *See id.* at 87.

At his first hearing, Plaintiff testified that he is not able to work because he suffers from pain in his back and legs. *See id.* at 70. The pain, as described by Plaintiff, was present twenty-four hours a day. *See id.* at 296. He also had difficulty seeing in the morning when he woke up, which required the use of medications. *See id.* at 72, 84. Plaintiff suffered from shortness of breath, which required the use of an inhaler, and, at the time of the second hearing, Plaintiff was also using a nebulizer twice a day. *See id.* at 44. In his own assessment, Plaintiff can lift less

than ten pounds, sit for 15-20 minutes, and stand for a couple of hours with a cane. *See id.* at 76-77. At the second disability hearing, Plaintiff testified that his "whole body goes numb and [he] falls down," and he was then only able to sit for five minutes before he had to stand and could only stand for twenty minutes. *Id.* at 41-42, 49. In addition to his alleged physical impairments, Plaintiff claimed that he suffer from "a lot of mental problems," including panic attacks and depression. 74-75. In his testimony, Plaintiff stated that he was not able to finish things that he starts, his memory was failing him, and he does not have any energy. *See id.* at 75. Plaintiff notes that he is able to follow written and spoken instructions. *See id.* at 302.

Plaintiff was married but separated from his spouse since 2007. *See id.* at 67. He shared a residence that is owned by his roommate, and he received rent checks and food stamps from social services. *See id.* at 68. Plaintiff has a driver's license, and he was able to drive himself independently when he went out. *See id.* at 298-99. His roommate paid for Plaintiff's car insurance and allowed him to use one of his vehicles. *See id.* at 82. Plaintiff was able to pay bills, count change, and manage his savings account. *See id.* at 299. Plaintiff has an adult daughter and grandchildren, and he saw his grandchildren periodically. *See id.* at 49, 83-84. Plaintiff completed his education in ninth grade, and he did not ever obtain a high school equivalency degree. *See id.* at 84. He has not completed any vocational training. *See id.*

Most recently, Plaintiff was a drillers assistant, working in mines, for Boart Longyear Company. *See id.* at 242-44, 273. He worked in that position from 1995 through 1999 and from 2001 through 2008, along with other jobs. *See id.* In that position, Plaintiff worked twelve-hour shifts and had to lift a maximum of 250 pounds. *See id.* at 69. Also in Plaintiff's past relevant work history, he worked in quarries and a paper mill. *See id.* at 70, 242-44. In those positions, Plaintiff also performed a lot of lifting. *See id.* Plaintiff had not ever had a sedentary job. *See id.*

at 70. Plaintiff worked until January 3, 2009 when he stopped due to his impairments. *See id.* at 272.

On February 23, 2011, Plaintiff filed applications for a period of disability and DIB. *See id.* at 238-41, 268. The application was initially denied on June 24, 2011. *See id.* at 91, 126-29. Plaintiff then requested a hearing by an administrative law judge. *See id.* at 130. A hearing was conducted on September 27, 2012 before Administrative Law Judge John P. Ramos (the "ALJ"). *See id.* at 62-90. The ALJ issued an unfavorable decision to Plaintiff, dated October 23, 2012. *See id.* at 98-117. Plaintiff filed a request for review of a hearing decision with the Appeals Council. *See id.* at 184. The Appeals Council issued an order remanding Plaintiff's claim back to the ALJ to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. *See id.* at 122-24. A second hearing was held via video-teleconference, on September 4, 2014, before the ALJ. *See id.* at 36-61. Pursuant to the Appeals Council order, the ALJ obtained evidence from Linda N. Vause, a vocational expert. *See id.* at 54-61, 235-36. The ALJ issued an unfavorable decision to Plaintiff, dated January 15, 2015. *See id.* at 10-27.

The ALJ made the following determinations: (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013; (2) Plaintiff had not engaged in substantial gainful activity since January 3, 2009, the alleged onset of disability, through his date last insured of December 31, 2013; (3) through the date of last insured, Plaintiff's severe impairments included degenerative disc disease of the cervical and lumbar spine, status post September 2013 cervical fusion, chronic obstructive pulmonary disease ("COPD"), history of convulsive disorder/vasovagal syncope, a depressive disorder, and an anxiety disorder; (4) through the date of last insured, Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of a Listed Impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listed Impairment(s)"); (5) through the date of last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) because the claimant was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday; he was able to occasionally perform repetitive hand-finger actions, such as fingering or feeling, has the ability to grasp, hold, and/or turn larger objects; he had to avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, and gases; he retained the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, and regularly attend to a routine and maintain a schedule; he was able to relate to and interact with others in order to carry out simple tasks, but he had to avoid work requiring more complex interaction or joint effort to achieve work goals; he was able to handle work-related stress in that he was able to make occasional simple decisions directly related to the complection of his tasks in a stable, unchanging work environment; he needed to avoid fine, close-up work involving small objects requiring binocular vision but had sufficient visual acuity to work with larger objects and avoid workplace hazards; and Plaintiff required the use of a cane to ambulate but retained the ability to carry small objects in his free hand; (6) through the date of last insured, Plaintiff was not capable of performing any past relevant work; and (7) considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, through the date of last insured. *See id.* Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from January 3, 2009 through December 31, 2013, the date of the decision. *See id.* at 20.

Plaintiff filed a request for review of the hearing decision with the Appeals Council. *See id.* at 6. In a notice dated December 7, 2015, the request was denied rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1-3. Plaintiff then commenced this action for judicial review of the denial of his claim by the filing of a complaint on January 5, 2016. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 14, 17. The Court orders that the Commissioner's decision is remanded.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 (2d Cir. 2012); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The Court must examine the administrative transcript as a whole to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *See Brault*, 683 F.3d at 447; *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principals may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the

6

application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted). If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in [its] duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). This very deferential standard of review means that "once an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

**B.     Analysis**

   *1. Five-step analysis*

For purposes of DIB, a person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

7

> The Social Security Administration regulations outline the
> five-step, sequential evaluation process used to determine whether a
> claimant is disabled: (1) whether the claimant is currently engaged
> in substantial gainful activity; (2) whether the claimant has a severe
> impairment or combination of impairments; (3) whether the
> impairment meets or equals the severity of the specified
> impairments in the Listing of Impairments; (4) based on a "residual
> functional capacity" assessment, whether the claimant can perform
> any of his or her past relevant work despite the impairment; and (5)
> whether there are significant numbers of jobs in the national
> economy that the claimant can perform given the claimant's residual
> functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).

### *2. Residual Functional Capacity*

Plaintiff contends that the ALJ's determination denying his disability application should be remanded back to the Commissioner because, prior to the ALJ's decision and within the period of disability, he developed a new impairment that the ALJ did not take into consideration when determining his RFC. *See* Dkt. No. 14 at 15-25. Specifically, Plaintiff claims that the ALJ relied solely on medical evidence that predated his new impairment, and, as a result, there is not substantial evidence to support that he can perform light work. *See id.* at 20-25. The court agrees.

On October 23, 2012, the ALJ, in the first decision denying Plaintiff's application for disability benefits, found that Plaintiff's severe impairments included COPD, degenerative disc disease of the lumbar spine, convulsive disorder, panic disorder without agoraphobia, and generalized anxiety. *See* T. at 103. By January 2015, the ALJ added degenerative disc disease of the cervical spine and status post cervical fusion to the list of severe impairments, among others. *See id.* at 16. The medical evidence in the interim of October 2012 through January 2015 demonstrates that Plaintiff was diagnosed with cervical myelopathy with severe spinal cord

8

compression and radiculopathy. *See id.* at 695-99, 769-71. Dr. Craig T. Montgomery, a neurosurgeon, performed an anterior cervical diskectomy and fusion of Plaintiff's cervical spine at the 4-5, 5-6, and 6-7 levels on September 6, 2013. *See id.* at 695. Dr. Montgomery's records describe that Plaintiff had sustained a neck injury several years earlier, but Plaintiff reported a significant increase in neck pain in 2013. *See id.* at 697. After surgery, Plaintiff's pain and symptoms are noted to be slowly improving, and, in September 2013, a neurosurgical provider indicated that Plaintiff is not to push, pull, twist, bend, or lift greater than five pounds, among other medically-directed limitations. *See id.* at 772.

In October 2013, the records indicate that Plaintiff was complaining of headaches and posterior head pain only, but the radiology showed that there was not yet solid fusion in the cervical spine. *See id.* at 775. He was directed to stay in the collar for another six weeks. *See id.* By February 2014, beyond the last date insured, Plaintiff was seeking further evaluation and treatment of his neck pain. *See id.* at 777. Dr. David Padalino, M.D., a neurosurgeon, stated that he does not find any evidence of significant myelopathy on examination, but he did not have any recent radiology to review. *See id.* at 779. Further radiation studies showed that Plaintiff did not have any spinal cord compression, and there was no surgical treatment available to him. *See id.* at 886. The medical plan was to proceed to pain management for his neck and lower back. *See id.* The medical records from Dr. Edward L. Reason, M.D., from the time Plaintiff was diagnosed with cervical myelopathy to the date last insured, do not provide any objective findings with regard to that medical condition. *See id.* at 621-32, 658-61, 734-40, 787-97, 912-38.

The Regulations state that an application for disability remains in effect until the administrative law judge issues a hearing decision on the application. *See* 20 C.F.R. § 404.620(a). If a case is remanded by the court, the administrative law judge's hearing decision

then becomes the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(a). In this case, the ALJ must consider any new impairments developed after his first decision dated October 23, 2012, but before the date Plaintiff was last insured. *See Krauser v. Astrue*, 638 F.3d 1324, 1329 (10th Cir. 2011). It is clear from the January 15, 2015 decision that the ALJ recognized that Plaintiff had new severe impairments of degenerative disc disease of the cervical spine and status post cervical fusion. *See* T. at 16. The ALJ also elicited this information at the second disability hearing. *See id.* at 40-41. The record demonstrates that Plaintiff's cervical myelopathy was medically diagnosed and new symptoms of pain were documented in 2013. *See id.* at 704-720, 695-96, 726-31, 770-79, 884-86. In support of the RFC, the ALJ reviewed the surgery records from Dr. Montgomery, but he does not discuss other medical evidence after the diagnosis of cervical myelopathy. *See id.* at 19-24. The ALJ relies almost exclusively on the consultative internal medicine examination performed on May 14, 2011 by Dr. George Alexis Sirotenko, D.O., in determining the RFC. *See id.*

In this case, the Court cannot say that Dr. Sirotenko's opinion, dated before the development of Plaintiff's cervical spine condition, is substantial evidence supporting the RFC. *See Smith v. Astrue*, 961 F. Supp. 2d 620, 664 (D. Del. 2013) ("It can be inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, particularly if a claimant's medical condition changes significantly after the opinion is issued."); *Colussy v. Colvin*, Civil Action No. 13-1269, 2014 WL 1766928, *12 (W.D. Pa. May 2, 2014). Given that Dr. Sirotenko found that Plaintiff had full flexion, extension, lateral flexion, and full rotary movements bilaterally in his cervical spine in 2011 and that the condition of Plaintiff's cervical spine changed significantly after this assessment, the ALJ should not have accorded this opinion significant weight in determining the RFC. *See* T. at 23, 427. Accordingly, the Court

10

remands this matter to the Commissioner to determine Plaintiff's RFC based upon the medical evidence from the complete period of disability and other evidence in the record and, if necessary, obtain the assistance of a medical adviser to determine the most Plaintiff could do during the period of disability.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: January 20, 2017
       Albany, New York

Mae A. D'Agostino
U.S. District Judge